CIBA Co. *v.* UNITED STATES (No. 3941)[1]

United States Court of Customs and Patent Appeals, March 2, 1936

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *John J. McDermott,* special attorney, of counsel), for the United States.

[Oral argument February 5, 1936, by Mr. Carter and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Collector of Customs at the port of New York classified certain coal-tar dyes, imported in the year 1931, under paragraph 28, Tariff Act of 1930, the relevant portions of which are as follows:

PAR. 28. Coal-tar products:

(a) All colors, dyes, or stains * * * 45 per centum ad valorem and 7 cents per pound.

    *         *         *         *         *         *         *

---

[1] T. D. 48210.

(e) The specific duties provided for in this paragraph on colors, dyes, or stains * * * shall be based on standards of strength which shall be established by the Secretary of the Treasury, and upon all importations of such articles which exceed such standards of strength the specific duty shall be computed on the weight which the article would have if it were diluted to the standard strength, but in no case shall any such articles of whatever strength be subject to a less specific duty than that provided in subparagraph (a) or (b), as the case may be.

*       *       *       *       *       *       *

(h) In the enforcement of the foregoing provisions of this paragraph the Secretary of the Treasury shall adopt a standard of strength for each dye or other article which shall conform as nearly as practicable to the commercial strength in ordinary use in the United States prior to July 1, 1914. * * *

It will be noticed that the tariff act provides an ad valorem rate and also a specific duty of 7 cents per pound.

There were three separate entries involving three colors, respectively, Rhodamine B Extra, Alizarine Red S. W. and Kiton Fast Red R.

The collector, in levying the specific rate, arrived at the number of pounds for duty purposes by multiplying the number of actual pounds of the Rhodamine B Extra by five, since the imported dye was five times the strength of the standard for that particular dye, which standard had been established by the Secretary of the Treasury on May 17, 1924, in T. D. 40192.

The actual number of pounds of Alizarine Red S. W. imported was multiplied by 1.20 upon the same principle, and in accordance with the standard established by the Secretary of the Treasury on November 1, 1924, in T. D. 40450.

The actual number of pounds of the Kiton Fast Red R imported was multiplied by 1.43 on account of the standard established by the Secretary of the Treasury on June 3, 1925, in T. D. 40922.

It is conceded that the merchandise was properly classified under said paragraph 28 and no question is raised as to the proper application of the 45 per centum ad valorem duty.

The importer protested the action of the collector in not levying duty upon the actual number of pounds imported. The trial court overruled appellant's protest and the appellant has appealed here.

Paragraph 28, Tariff Act of 1922, the predecessor of the paragraph here involved, authorized the Secretary of the Treasury to establish standards of strength for coal-tar dyes such as are involved here. The standards of strength involved in the collector's estimation of the number of pounds and the amount of duty in the instant case were (as is above recited) the standards which were provided by the Secretary of the Treasury under authority of the Tariff Act of 1922. No other standards applicable to the dyes here involved had been established at the time of the trial of this case in the court below, although

paragraph 28, Tariff Act of 1930, provides that the specific duties on dyes, etc.,

shall be based on standards of strength which *shall* be established by the Secretary of the Treasury. (Italics ours.)

The importer contends here that since the Tariff Act of 1930 repealed the Tariff Act of 1922, the standards of strength established by the Secretary of the Treasury applicable to importations under the 1922 act were not available in estimating the weight at which duty should be assessed under the Tariff Act of 1930, and relies on the law as laid down by this court in *United States* v. *Sandoz Chemical Works*, 14 Ct. Cust. Appls. 21, T. D. 41542. There, dyes were imported before any standards of strength had been established. The standards of strength provision in the Tariff Act of 1922 was new legislation. This court held that since there were no standards of strength established when the goods were imported, the collector was required to levy duty upon the true weight of the imported merchandise and not upon the weight to be established by tinctorial strength, governed by standards subsequently fixed by the Secretary of the Treasury. We there said:

Paragraph 28 provides that dyes dutiable thereunder shall pay the specific duty of 7 cents per pound which, if the imported dyes are of a strength greater than the standards established therefor by the Secretary, shall be computed on the weight the dyes would have if diluted to standard strength and that in the enforcement of that provision the Secretary of the Treasury shall establish standards of strength. There is no suggestion in the paragraph that until such standards are established, such duty may be taken on other than the actual weight.

The law is well settled that, in the absence of a statute providing otherwise, duties which are based upon the weight of imported merchandise must be taken upon the true weight thereof. *Downing & Co.* v. *United States*, 11 Ct. Cust. Appls. 310, T. D. 38128, and cases cited.

The standards of strength, when established, were designed to become a part of the law, but, until established as provided in paragraph 28, customs officers had no authority to take duty upon other than the true weight of the dyes in this case. * * *

The appellant argues that Congress by plain language prescribed that where the dutiable weight of the imported coal-tar product was to be determined in accordance with the standards established, it must be determined by standards which had been established under the authority granted by the Tariff Act of 1930 and not under standards which had been established under the authority of the Tariff Act of 1922, which act had been repealed; that the standards established under the Tariff Act of 1922 did not carry over and were not in effect after the act of 1922 had been repealed; and that the term "shall be established" as used in the paragraph must be held to indicate that whatever standards were resorted to by the collector

must be those which were established subsequent to the effective date of the Tariff Act of 1930. No question is raised as to the validity of the standards fixed under the Tariff Act of 1922 where applicable. The sole question is as to their applicability to the involved merchandise.

The Government, in support of the decision of the trial court, points out that the standards resorted to by the collector, although established under the authority of the Tariff Act of 1922, were of permanent character, published in the TREASURY DECISIONS for the guidance of all customs officers, and that, in the absence of any subsequent establishment of standards, they were available to the collector in the performance of his duties in reference to the instant importation, as is above stated, and relies largely on the decision of this court in United States v. McGraw Wool Co., 19 C. C. P. A. (Customs) 205, T. D. 45296.

The Government sets out in its brief a letter of the Secretary of the Treasury, dated June 14, 1930, addressed to the collectors of customs which, in effect, advised the collectors that the Treasury Department, when the new act became effective, would issue instructions continuing existing regulations wherever applicable and would prescribe such further regulations as were required. Also the Government sets out a telegram, dated June 17, 1930 (the date when the act was approved) in which the collectors of customs were advised that—

Existing regulations including dye standards paragraph twenty eight extended so far as applicable pending further instructions.

It will be noted that this instruction was issued on the day before the Tariff Act of June 17, 1930, became effective in accordance with its express terms.

As we understand the contention of the Government, it relies upon these instructions to the collectors as merely indicating that no new standards of strength established under the authority of the Tariff Act of 1930 would be available for coal-tar products imported immediately after the act went into effect and that the Secretary intended that the standards already established should apply unless others were subsequently established.

Under our holding in the Sandoz Chemical Works case, supra, no weight but the true weight of the imported merchandise may be taken by the collector unless there are available certain standards of strength, established in accordance with law, which would require otherwise. We think, however, that the trial court arrived at the right conclusion and that the standards of strength established under the authority of the Tariff Act of 1922 were properly resorted to by the collector in the performance of his duties in connection with the instant importations.

In the *McGraw* case, *supra*, this court had under consideration the question as to whether or not a regulation, concerning the ascertainment of the dutiable weight of wool, made under one act, carried over and remained effective in the performance of the same duty under a subsequent act, where the subsequent act repealed the law under which the regulation was established. We there said:

It is true that a regulation of the Secretary of the Treasury, duly promulgated in pursuance of the authority given to the Secretary in a tariff act by Congress, will continue in operative force and effect, in the absence of any order of the Secretary repealing or modifying the same, or, in the absence of a new regulation in lieu thereof, after a new tariff act containing a like power to make regulations has been enacted and has become effective. This, however, is not because of any continuing vitality of the regulation itself, but is because it is assumed that the Secretary, by the absence of action on his part, has assented to and repromulgated the former regulation for the time being. The moment he acts, however, under the new tariff act such new action constitutes his regulation and the former one becomes, by that act, abrogated.

Let us assume that the Secretary duly promulgated a regulation concerning the dutiable weight of wool, by virtue of his authority under the Tariff Act of 1922. Assume, further, that the Tariff Act of 1930 contained no provision authorizing the Secretary to make any such regulation. It must be conceded in such case that when the Tariff Act of 1930 became effective, *eo instanti* the said former regulation became of no force and effect. The authority being withheld, and the former act being repealed, no further authority existed, and the regulation was a nullity.

Appellant contends that the language above quoted was *obiter;* that the only issue there involved was whether the regulation was reasonable or unreasonable, and it further says:

Although it might be held that such a *regulation* once established continues in effect, the same cannot be said about the performance of a *specific act*. (Italics ours.)

Appellant in this manner attempts to distinguish between a regulation such as was involved in the wool case and a promulgated finding and instruction with reference to certain standards for coaltar dye products. While appellant contends that making this distinction involves the principle announced in *United States* v. *Jules Raunheim (Inc.) et al.*, 17 C. C. P. A. (Customs) 425, T. D. 43867, where it was held that there was no presumption of commercial designation continuing from one tariff act to another, no authorities on the exact question here presented have been submitted.

As to the contention of the appellant that the above-quoted language from our decision in the *McGraw* case, *supra*, is *obiter*, we think that, regardless of whether the said language used was necessary to the decision of that case or whether the issues there were sufficiently identical with those at bar as to render the quoted language controlling of decision of the issues in this case, it has an apt application here. The language quoted was an appropriate part of the

360

reasoning in that decision and meets with our approval when applied to the facts at bar. See *Williams* v. *United States*, 289 U. S. 553, 570–571.

If a *regulation* adopted and promulgated under the Tariff Act of 1922 to guide the collector in ascertaining the dutiable weight of wool is in force and effective after the 1922 act was repealed and the 1930 act became effective (no new regulations having been promulgated), we can see no logical reason why, under all the circumstances above enumerated, the standards of strength established and promulgated by the Secretary of the Treasury under the authority of the Tariff Act of 1922 should not also continue and apply to importations under the Tariff Act of 1930.

We are not in agreement with the contentions of appellant that the repeal of the Tariff Act of 1922 *ipso facto* abrogated the standards of strength established in pursuance of the authority granted in that act. If the contention of the appellant were agreed to, it seems to us that it would necessarily follow that much confusion and lack of uniformity in the levying of tariff duties on imported coal-tar products would result in connection with importations made immediately after a new act came into effect and before any new standards could be promulgated. Congress, presumably having this fact in mind, did not intend, under the circumstances which here exist, to abrogate or make ineffective the old standards established under the Tariff Act of 1922, by the clause used in the Tariff Act of 1930 "which shall be established by the Secretary of the Treasury".

We see no proper application to the issues here involved of the principles laid down in the decisions cited by appellant which are concerned with certain phases of tax legislation, or the principle of commercial designation contained in the *Jules Raunheim* case, *supra*.

The judgment of the United States Customs Court is *affirmed*.

GARRETT, Judge, concurs in the conclusion.